UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C.

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 1:21-00267 |
| v. | ) JUDGE CHRISTOPHER R. COOPER |
| | ) |
| BRYAN WAYNE IVEY | ) |

BRYAN IVEY'S SENTENCING MEMORANDUM

Bryan Ivey is extremely remorseful for his conduct on January 6, 2021. He looks forward addressing this Court at the sentencing hearing. He wants this Court to know that he is truly sorry that he entered the Capitol through a broken window, and then remained inside without permission for about 35 minutes. Mr. Ivey also wants this Court to know that he has reflected deeply upon his motivations and conduct and has learned his lesson from the instant prosecution. He now accepts the results of the 2020 presidential election, and he promises this Court that he will never again engage in illegal activity at the Capitol or anywhere else.

After the presidential election in November 2020 and based on the widely-publicized (and false) claims of certain politicians and irresponsible media, Mr. Ivey believed that the election had been stolen and that President Joe Biden's victory had been rigged. Mr. Ivey believed that the lies about the election were true, and he traveled to Washington D.C. with his wife and brother to participate in the "Stop the Steal" protest. Mr. Ivey had never attended a political protest before, and he has not done so since. When he left his home in Tennessee, Mr. Ivey had no intention of

entering the Capitol, interfering in the election certification, or breaking the law in any way. He simply wanted to protest what he believed to be a stolen election.

Mr. Ivey has learned a hard lesson from the events of January 6 and from this criminal prosecution for his actions. After further consideration, he now recognizes that the election was not stolen, and he wants to continue getting help for his mental health issues. Mr. Ivey is not a hardened criminal. He is not a risk to reoffend, and by his compliance with all the terms and conditions of his pretrial release, he has demonstrated excellent post-offense rehabilitation.

The violence that Mr. Ivey witnessed at the Capitol that infamous day was quite traumatizing to him. After leaving the Capitol, he and his family immediately returned to Tennessee, and a few days later, Mr. Ivey sought help from a mental health professional. Mr. Ivey already had a history of trauma from the horrible abuse that he suffered as a child. And Mr. Ivey's mental health issues made him prone to conspiratorial claims about the election and the world in general. Mr. Ivey attended the protest because, at that time, he thought that a world government was coming and that it had a plan to depopulate the earth. But he now recognizes that his fears and beliefs were not true, and he has sought help for his mental health issues that led to this conspiratorial thinking.

Mr. Ivey pleaded guilty at a very early stage in this case. He was arrested on March 4, 2021, charged by information on March 31, 2021, and pleaded guilty on June 22, 2021. He pleaded guilty to one count of Parading, Picketing, and Demonstrating Inside a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G),

and now faces sentencing before this Court. His early guilty plea demonstrates his acceptance of responsibility and his remorse for his actions. He hopes this Court will see fit to sentence him to a period of probation and a term of home confinement for his offense. An analysis of the relevant sentencing factors demonstrates that the requested sentence is sufficient, but not greater than necessary, to comply with the sentencing purposes set forth at 18 U.S.C. § 3553(a).

## I. Nature and Circumstances of the Offense.

Late in the evening on January 5, 2021, Mr. Ivey left Tennessee and traveled with his wife and brother by car to Washington D.C. He and his family drove from Tennessee to Virginia and then rode a train into the city. Mr. Ivey arrived in D.C. at about 11:00 a.m. or 12:00 p.m. and saw protesters heading towards the Capitol. He had never been to D.C. before and was unsure of where President Trump's speech was taking place, so he followed other protestors who were walking towards the Capitol. When he arrived at the Capitol, he joined protesters who were at barricades on the west side of the building. He can be seen in videos holding a Trump flag, and at one point, talking respectfully with a Capitol Police Officer. After a short period of time, Mr. Ivey and many other protestors walked up the stairs near some scaffolding on the side of the building.

He then approached some doors and a window with other protesters. One protester, who Mr. Ivey did not know, used a police shield to smash a window. Mr. Ivey can be heard on a video recording stating, "he's breaking the window." After the window was broken, numerous protesters began climbing through the window

to enter the building. Mr. Ivey climbed through the window and was approximately the fourteenth person to climb through. After entering the building, Mr. Ivey can then be seen on a video, provided by the government in discovery, holding his cell phone in the air and approaching a door where other protesters were entering. On the video, he is then seen approaching a door and patting several of the protesters on the back as they enter, or as the government has described it in the Statement of the Offense in Support of Guilty Plea, he "waved" in several protesters.

Mr. Ivey then walked through a hallway with other protesters and entered the Rotunda. He remained in the Rotunda for several minutes and then left the Rotunda to join his family who remained outside.

Mr. Ivey was inside the Capitol for about 35 minutes. He and his family then rode the train back to Virginia and then traveled home to Tennessee in Mr. Ivey's wife's vehicle.

Mr. Ivey did not use violence and was peaceful during his time at the Capitol. He spoke to Capitol Police Officers on the barricade in a respectful fashion. He did not bring or use any weapons. After he entered the Capitol, he made his way to the Rotunda and remained inside for about a total of 35 minutes before he left the Capitol. By the time that many other protesters entered the Capitol, Mr. Ivey had already left the building.

Mr. Ivey had no intent to interfere with the certification of the election. He did not go into the Senate Chamber, he did not assault anyone, he did not vandalize anything or steal anything.

After Mr. Ivey returned to Tennessee, he felt quite traumatized by the violence and strife that he witnessed at the Capitol on January 6. A few days after the event, he sought mental health treatment through his employer because he was traumatized by the events at the Capitol.

On March 4, 2021, the FBI arrested Mr. Ivey at his home in Cookeville, Tennessee. He cooperated with the agents and provided a statement concerning the offense and confessed to entering the Capitol. He admitted that he had taken video on his phone while inside the Capitol but deleted it once he returned to Tennessee. He also consented to a search of his home and vehicle.

## II.   History and Characteristics of the Defendant.

Mr. Ivey was 28 years of age at the time of this offense. He is currently employed and has been working for the last two years at Pine Bluff Materials in Nashville, Tennessee, as a heavy equipment operator, deckhand, dock worker, and in equipment maintenance. He is a good employee. He has a good work history, having worked for several other companies, including Timberline Drilling, Nyrstar Zinc Mine, and Stonepeak Ceramics, in Tennessee. (Presentence Report "PSR" at ¶ 75.)

Mr. Ivey has a minimal criminal record consisting of a misdemeanor theft conviction when he was 21 years of age in 2014, and a conviction for driving on a suspended license from 2015 when he was age 22. (PSR at ¶¶ 26, 28.)

At the time of the offense, Mr. Ivey was married to Kelly Ivey. They were married in June of 2016, and for the last five years Mr. Ivey has lived with her and

helped to raise her two children from prior relationships. (PSR at ¶ 45.) Mr. Ivey loves her children very much and has been a good stepfather to them. However, Mr. Ivey and his wife separated in the fall of 2021 (PSR at ¶ 51), and the breakup of his marriage has been quite painful for Mr. Ivey.

As a child, Mr. Ivey endured serious and horrible child abuse. (PSR at ¶¶ 37-43.) As a result of his traumatic upbringing, Mr. Ivey has developed some mental health issues and needs therapy and treatment. (PSR at ¶ 63.) His mental health issues made him prone to conspiratorial claims about the world and the election. This is a strong mitigating factor that counsels in favor of mercy and understanding in this case. Courts have long recognized that a defendant's difficult childhood is a mitigating factor at sentencing. *See, e.g.*, *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring) (explaining that "evidence about the defendant's background and character is relevant [in death penalty case] because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse"). "[I]t is clear that adverse childhood experiences have a profound, proportionate, and long lasting effect on emotional state. . . " Vincent J. Felitti & Robert F. Anda, The Relationship of Adverse Childhood Experiences to Adult Medical Disease, Psychiatric Disorders, and Sexual Behavior: Implications for Healthcare 7, in The Hidden Epidemic: The Impact of Early Life Trauma (2009) (R. Lanius and E. Vermetten, eds.), available at http://www.acestudy.org/yahoo_site_admin/assets/docs/LaniusVermetten_FINAL_8-

26- 09.12892303.pdf. "[C]hronic, toxic stress like poverty, neglect and physical abuse — can have lasting negative impacts. A team of researchers recently showed these kinds of stressors, experienced in early life, might be changing the parts of developing children's brains responsible for learning, memory and the processing of stress and emotion." University of Wisconsin-Madison, Early Life Stress Can Leave Lasting Impacts on the Brain, Science Daily (June 27, 2014), available at http://www.sciencedaily.com/releases/2014/06/140627133107.htm.

After the incident on January 6, Mr. Ivey sought mental health treatment through his employer. He has struggled with mental health issues since he was a teenager. He has been receiving mental health treatment and has been prescribed medication for anxiety and depression. (PSR at ¶ 62.) Mr. Ivey has also used marijuana to self-medicate in the past, including up until the time of the offense. (PSR at ¶ 68.) However, since the offense, Mr. Ivey has not used any drugs, including marijuana, and has returned negative results on drug tests during his pretrial release. (PSR at¶ 69.) And, in addition, Mr. Ivey has been on pretrial release since March 4, 2021, and has complied with all of the conditions of his release with no violations. (PSR at ¶ 10.)

Mr. Ivey has also undergone a forensic mental health evaluation by Dr. Mary Elizabeth Wood, a psychologist with Vanderbilt University. (PSR at ¶ 63.) Dr. Wood's forensic evaluation summarizes Mr. Ivey's history of trauma and abuse during his childhood, and she has provided diagnoses in her report. Due to the sensitive nature of this medical and mental health information, Dr. Wood's

7

evaluation is filed with this Court under seal as Exhibit 1 to this sentencing memorandum.

It should also be noted that Mr. Ivey served in the Tennessee National Guard for approximately three years from May 11, 2014, and was discharged and received a General-Under Honorable Conditions discharge. (PSR at ¶ 72.)

The nature and circumstances of the offense and the history and characteristics of the defendant support a sentence of probation with a period of home detention. Mr. Ivey traveled to Washington, D.C. to engage in protected political speech by attending the "Stop the Steal" demonstration. He did not intend to break the law or enter the Capitol when he went there. Unfortunately, Mr. Ivey got caught up in the heat of the moment. He knows that it was wrong of him to enter the Capitol without permission, and that, in particular, he should have never climbed through the broken window. Mr. Ivey is very sorry for entering through the window and promises this Court he will never again do such a thing.

As a result of his childhood trauma, Mr. Ivey has mental health issues and needs additional therapy and treatment. A sentence of probation, with a condition that he continue to receive mental health treatment, will provide Mr. Ivey with needed "medical care" in the most effective manner as required by 18 U.S.C. § 3553(a)(2)(D).

### III. The Need For the Sentence Imposed to Comply with the Statutory Sentencing Purposes.

Mr. Ivey submits that a sentence of home detention with a period of probation will adequately reflect the seriousness of the offense, promote respect for

the law, and provide a just punishment. 18 U.S.C. § 3553(a)(2)(A). Indeed, the Supreme Court has recognized that probation is a valid punishment for a youthful offender who has demonstrated post-offense rehabilitation and that probation constitutes a substantial restriction on liberty. *Gall v. United States,* 552 U.S. 38, 45 (2007). Mr. Ivey has learned his lesson from the prosecution in this case and has been strongly deterred from ever engaging again in such conduct. As a result, the requested sentence will "afford adequate deterrence to criminal conduct" as required by 18 U.S.C. § 3553(a)(2), and it will "protect the public" because Mr. Ivey has been specifically deterred and will not offend again.

### IV. The Need to Avoid Unwarranted Sentence Disparities.

This Court must also impose a sentence that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as required by 18 U.S.C. 3553(a)(6). The requested sentence of a term of probation with a period of home detention is consistent with other sentences that have been handed down so far to those involved in the January 6 riot at the Capitol. Other individuals who have plead guilty to the same or similar offenses involving the January 6 riot, and who did not use violence or weapons or commit vandalism or theft, have received non-custodial sentences of probation or probation with home detention. Indeed, nearly two-thirds of those already sentenced for this offense or similar offenses have received a sentence that did not involve incarceration. Thus, the requested sentence is consistent with the sentences imposed in other similar cases and will not produce unwarranted disparity.

## V.  Conclusion.

Mr. Ivey now recognizes that the election was not stolen or rigged, and that certain politicians and media have lied to him. He wants this Court to know that he recognizes that Joe Biden is the legitimate President of the United States, and that Kamala Harris is the legitimate Vice President of this nation. He is very sorry that he entered the Capitol, and that he climbed through a broken window to do so.

Mr. Ivey respectfully requests that this Court impose a sentence of probation, as recommended by the probation officer in the Sentencing Recommendation (Docket No. 33), coupled with a term of home detention. He promises this Court that he will comply with the terms and conditions of his probation, just as he has with the terms and conditions of his pretrial release. Mr. Ivey has also agreed to pay $500 in restitution as part of his plea agreement, and he and is also amenable to doing community service work as condition of his probation.

Mr. Ivey is a good young man who is no way a hardened criminal or a danger to anyone. He knows he made a horrible mistake when he entered the Capitol, but he assures this Court, if given the opportunity to serve a period of probation with home detention, that he will not let this Court down. He will continue to work and live as a law-abiding citizen in his community in Tennessee, and he will continue to get the mental health treatment that he needs. Mr. Ivey also wants this Court to know that he respects our nation's democratic values and its democratic processes and election laws. Mr. Ivey has been deterred by the instant prosecution and he will never again break the law or enter the Capitol illegally.

Respectfully submitted,

s/ *R. David Baker*
R. DAVID BAKER
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047
David_baker@fd.org

Attorney for Bryan Wayne Ivey

## CERTIFICATE OF SERVICE

    I hereby certify that on February 1, 2021, I electronically filed the foregoing *Bryan Ivey's Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Leslie A. Goemaat, Assistant United States Attorney, 555 4th St. N.W., Washington, D.C., 20530.

s/ *R. David Baker*
R. DAVID BAKER