UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:21-00267 |
| v. | ) | JUDGE CHRISTOPHER R. COOPER |
| | ) | |
| BRYAN WAYNE IVEY | ) | |

<u>DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM</u>

Bryan Wayne Ivey, through undersigned counsel, hereby responds to the government's sentencing memorandum in order to: 1) clarify a few points made by the government regarding his interview with the F.B.I., and 2) set forth his position that the government's request for a period of incarceration and probation is not authorized by law.

1.     **Mr. Ivey's interview with F.B.I. agents**

Mr. Ivey was interviewed by the F.B.I. early in the morning on the day of his arrest, March 4, 2021. Mr. Ivey had been up all night working at his job at the time of the interview. Mr. Ivey cooperated with the agents and agreed to waive his *Miranda* rights. Mr. Ivey respectfully submits that he tried to be truthful with the agents and did not intentionally try to minimize his conduct or make any false statements to them. When he was interviewed that morning, he immediately admitted to the FBI agents that he travelled to Washington to protest and that he entered the Capitol through a broken window.

The government states that Mr. Ivey incorrectly told the police that there were "no signs, no fences, and nobody giving orders to disburse outside of the

Capitol." (Docket No. 34, Government's Sentencing Memorandum at 11.) However, Mr. Ivey made that statement at a point in the interview wherein he was discussing his approach to the building where the Senate Wing Door was located and that he did not know that "Congressman and Senators" were in that building. The were no signs or barricades or officers giving orders near the building by the Senate Wing Door. At that point in the interview, Mr. Ivey was not referring to barricades that he saw on the lower level before he climbed the steps and ascended to the area near the Senate Wing Door, nor was he suggesting that he did not see those.

The government is correct that Mr. Ivey told the F.B.I. that he was inside the building for about five or ten minutes when in fact he was inside for approximately 35 minutes. (*Id.* at 11.) Mr. Ivey respectfully submits that the incident at the Capitol was extremely stressful and that, when he was interviewed by the F.B.I. nearly two months after the incident early in the morning, he did not mean to intentionally misrepresent facts to the F.B.I. agents. Given the stressful nature of the events at the Capitol on January 6, it is not surprising that Mr. Ivey's perception of time was not extremely accurate. He certainly wasn't timing the incident as it took place.

The government also recounts that Mr. Ivey told the F.B.I. agents about an elderly couple he encountered in the Capitol and discussed how he left the building at them. (*Id.* at 10.) The government implies that Mr. Ivey was not being truthful stating, "Capitol surveillance footage obtained by the FBI does not show Ivey in the Capitol with an older couple…." (*Id.*) But the government is not correct. The

2

defense has recently located surveillance footage (within the thousands of hours of footage turned over in discovery) that demonstrates that Mr. Ivey was in the Rotunda conversing with an older lady with white hair and an older gentleman with a greenish jacket. The video footage also shows Mr. Ivey walking with the older couple and leaving the Capitol with them just as he told the agents in the interview.

7029 – Approx. 2:49-2:51 p.m.





0959 – Approx. 2:52 p.m.



0262 – Approx. 2:53 p.m.



0259 – Approx. 2:54 p.m.



0960 — Approx. 2:56-2:57 p.m.



7029 — Approx. 2:57 -3:00 p.m.





The above photos from Capitol surveillance cameras demonstrate that Mr. Ivey was truthful about the older couple in his interview with the FBI agents. Defense counsel has discussed this footage with the prosecutor in this case, and she has authorized defense counsel to state to this Court that the government now agrees that Mr. Ivey was truthful on this point. At the time the government filed its sentencing memorandum, the prosecutor had not seen this footage (within the thousands of hours of video footage) that shows Mr. Ivey with an older couple.

        In assessing Mr. Ivey's statement to the FBI agents, it is important to remember that Mr. Ivey was cooperative with the agents when they arrived at his home. He did not resist or attempt to flee. He waived his *Miranda* rights, agreed to be interviewed, and then confessed that he entered the Capitol. He also admitted that he entered the Capitol through a broken window after witnessing it being

smashed by another protestor. Mr. Ivey did not attempt to tell the agents that he did not enter the Capitol, and he accepted responsibility when he was confronted by the agents.

### 2. The government's request for incarceration and probation is not authorized by law

The government has requested a sentence of 14 days incarceration and three years of probation for Mr. Ivey's offense of conviction, a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in a Capitol Building. Mr. Ivey respectfully submits that such a sentence is not authorized under applicable law. The following legal argument has been developed by the Office of Federal Public Defender in the District of Columbia and is set forth below with the express permission of that office. Because the maximum authorized sentence for a violation of 40 U.S.C. § 5104(e)(2)(G) is six months or less of imprisonment, 40 U.S.C. § 5109(b), the offense is classified as a Class B misdemeanor, 18 U.S.C. § 3559(a)(7), and a "petty offense," 18 U.S.C. § 19.

### a. Authorized sentences

Chapter 227 ("Sentences") of Title 18 of the United States Code consists of four subchapters: A (General Provisions); B (Probation); C (Fines); and D (Imprisonment).

Subchapter A, codified at 18 U.S.C. §§ 3551–59, contains general sentencing provisions. The first section, "Authorized sentences," prescribes federal courts'

authority to sentence individuals convicted of federal crimes. It provides, in

relevant part:

> (b)    Individuals.--An individual found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to—
>
>> (1)    a term of probation as authorized by subchapter B;
>>
>> (2)    a fine as authorized by subchapter C; *or*
>>
>> (3)    a term of imprisonment as authorized by subchapter D.
>
> A sentence to pay a fine may be imposed in addition to any other sentence. A sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection.[1]

18 U.S.C. § 3551(b) (emphasis added). Accordingly, "a term of probation as

authorized by subchapter B" *and* "a term of imprisonment as authorized by

subchapter D" as a sentence for "an offense" is *not* an "[a]uthorized sentence[.]"

### 1.    Probationary sentences

Subchapter B, codified at 18 U.S.C. §§ 3561–66, governs sentences of probation.

Section 3561 provides, in full:

> (a)    In general.--A defendant who has been found guilty of an offense may be sentenced to a term of probation unless—
>
>> (1)    the offense is a Class A or Class B felony and the defendant is an individual;
>>
>> (2)    the offense is an offense for which probation has been expressly precluded; or

---

[1] "A sanction authorized" by §§ 3554, 3555, and 3556 is criminal forfeiture, notice to victims, and restitution, respectively. 18 U.S.C. §§ 3354, 3555, 3556.

> (3)    the defendant is sentenced at the same time to a term
> of imprisonment for the same or a different offense that is not
> a petty offense.

(b)    Domestic violence offenders.--A defendant who has been convicted for
the first time of a domestic violence crime shall be sentenced to a term of
probation if not sentenced to a term of imprisonment. . . .

(c)    Authorized terms.--The authorized terms of probation are--

> (1)    for a felony, not less than one nor more than five years;
>
> (2)    for a misdemeanor, not more than five years; and
>
> (3)    for an infraction, not more than one year.

18 U.S.C. § 3561. Accordingly, instead of "a term of imprisonment," the Court

may, "as authorized by subchapter B," sentence Mr. Ivey, "an individual found

guilty of an offense," 18 U.S.C. § 3551(b), that is "a misdemeanor," to a "term[] of

probation" of "not more than five years," 18 U.S.C. § 3561(c)(2).

## 2.    Supervised release terms

Subchapter D, codified at §§ 3581–86, governs sentences of

imprisonment, including terms of supervised release after imprisonment.

Under § 3583:

> (a)    In general.--The court, in imposing a sentence to a term of
> imprisonment for a felony or a misdemeanor, may include as a part
> of the sentence a requirement that the defendant be placed on a
> term of supervised release after imprisonment, except that the court
> shall include as a part of the sentence a requirement that the
> defendant be placed on a term of supervised release if such a term is
> required by statute or if the defendant has been convicted for the
> first time of a domestic violence crime as defined in section 3561(b).

(b)    Authorized terms of supervised release.--Except as
otherwise provided, the authorized terms of supervised release
are—

    (1)    for a Class A or Class B felony, not more than five years;

    (2)    for a Class C or Class D felony, not more than three years; and

    (3)    for a Class E felony, or for a misdemeanor *(other than a petty offense)*, not more than one year.

18 U.S.C. § 3583(a)–(b) (emphasis added). Accordingly, a term of supervised release is not

authorized for Mr. Ivey's petty offense conviction. 18 U.S.C. § 3583(b)(3).

A court is not statutorily authorized to impose both a term of imprisonment

and a term of probation, or a "split sentence," for one single petty offense

conviction. Therefore, a violation of 40 U.S.C. § 5104(e)(2)(G) may not include both

a term of imprisonment and a term of probation.

### b.    The plain text of §§ 3551(b) and 3561(a)(3), interpreted harmoniously, precludes a "split sentence" for any single offense

A "split sentence" is plainly not authorized in federal sentencing for any

offense. First, the plain text of § 3551(b) authorizes only imprisonment "*or*"

probation, not both. Section 3551(b) lists in the disjunctive three different types of

sentences—a term of probation, a fine, and a term of imprisonment—and then

provides that "a sentence to pay a fine may be imposed in addition to any other

sentence." The fact that the statute specifies that only one type of sentence—a

sentence to pay a fine—can be imposed in addition to a sentence of probation or a

sentence of imprisonment underscores that the other two types of sentences—

probation and imprisonment—are mutually exclusive. The text of the statute thus

provides a court with the clear dichotomous choice between imposing a sentence of a term of imprisonment and imposing a sentence of a term of probation for "an offense," *i.e.*, any one single offense of conviction.

Consistent with Section 3551, Section 3561(a)(3) confirms that a defendant cannot be sentenced to probation if he is sentenced to imprisonment "for the same" offense. Section 3561(a) further *limits* the use of probation. It prohibits probation in three circumstances: probation is not permitted (1) if "the offense is a Class A or Class B felony and the defendant is an individual," (2) if the offense of conviction is one for which the Code expressly excludes probation, or (3) if "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."

In subsection (a)(3), the phrase "that is not a petty offense" modifies solely "a different offense"; it does not modify "the same." Legislators "are presumed to be grammatical in their compositions" and "[g]rammatical usage is one of the means . . . by which the sense of a statute is conveyed[.]" Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140–41 (2012). Grammatically, the use of the word "*that*" instead of "*which*" is significant—"*that*" denotes a restrictive relative clause, rather than a nonrestrictive relative clause (signaled by "a comma plus *which*"). *Id.* at 142 & n. 7.[2] Accordingly, "*that*"

---

[2] For example, compare "Republicans oppose new taxes that are unnecessary. (Restrictive meaning: only unnecessary new taxes are anathema.)," with "Republicans oppose new taxes, which are unnecessary. (Nonrestrictive meaning: all new taxes are anathema.)." *Id.* (emphasis added). In subsection (a)(3), "that" provides a restrictive meaning.

restricts "is not a petty offense" to "a different offense." Had the drafters meant

for "is not a petty offense" to apply to both "the same" and "a different offense,"

the proper wording of subsection (a)(3) would have been: "the same or a different

offense, *which* is not a petty offense." The drafters instead properly used "that" as

a defining relative pronoun. *Id.* at 143.

The use of the disjunctive "or" in the statute ("the same *or* a different

offense") "is also instructive" and indicates that the later modifying clause does

*not* carry over to the term that precedes the disjunctive. *United States v. Nishiie*,

996 F.3d 1013, 1023 (9th Cir. 2021) ("As a general rule, the use of a disjunctive

in a statute indicates alternatives and requires that they be treated separately.")

(quoting *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975)).

Reading the phrase "that is not a petty offense" to modify only "a different

offense" is the grammatically correct reading of § 3561(a)(3), as well as the only

reading that is consistent with the purpose of § 3561(a) and the entire sentencing

scheme as a whole. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest

Assocs., Ltd.,* 484 U.S. 365, 371 (1988); Scalia & Garner at 167 ("Perhaps no

interpretive fault is more common than the failure to follow the whole-text canon,

which calls on the judicial interpreter to consider the entire text, in view of its

structure and of the physical and logical relation of its many parts.").

Section 3561 sets the applicable *prohibitions* on probation; it does not, as the

government suggests, "permit[] a sentencing court . . . to deviate from [an]

otherwise applicable general prohibition" (Doc. No. 34, Gov't Memo at 30) or

expand the use of probation to create the possibility of a "split sentence" for any and all petty offenses.

Thus, under the plain text and grammatically correct reading of subsection (a)(3), a term of probation for an offense is not permitted if the defendant is sentenced in the same sentencing proceeding to a term of imprisonment for the same offense conviction, but a term of probation is permitted if the defendant is sentenced at the same sentencing proceeding to a term of imprisonment for a *separate* conviction that is a petty offense. Accordingly, when a defendant is sentenced for two separate offenses of conviction at the same time, one of the two offenses is a petty offense, and the court imposes imprisonment for that petty offense, then the court can impose probation for the second offense. In other words, befitting its status as a petty (*i.e.*, minor) offense, a court can impose imprisonment (a short term of 180 days or less) for a petty offense and impose probation (and no term of imprisonment) on a separate (petty or non-petty) offense of conviction.[3] Where, as here, there is solely *one* petty offense conviction, a combined probationary and prison sentence is not statutorily authorized.

The government asserts that the phrase "that is not a petty offense" in § 3561(a)(3) modifies "the same" such that a "defendant may be sentenced to a

---

[3] By contrast, if the court imposes imprisonment for a non-petty offense, the court may not impose probation for the petty offense; the court must impose imprisonment for both offenses, and supervised release could follow for solely the non-petty offense. Similarly, if the court imposes probation for a petty offense, the court may not impose imprisonment for a non-petty offense; the court must impose probation for both offenses.

period of continuous incarceration and a term of probation" for one single petty offense. (Gov't Memo at 28.) Invoking the "series-qualifier canon,"[4] the government claims that "[t]he phrase 'that is not a petty offense' is a postpositive modifier best read to apply to the entire, integrated phrase 'the same or a different offense.'" (*Id.*) (citing Scalia & Garner at 148). The government is incorrect.

First, as the government concedes that with postpositive modifiers, the insertion of a determiner before the second item tends to "cut off the modifying phrase so that its backward reach is limited." Scalia & Garner at 149. Accordingly, in § 3561(a)(3), the insertion of the determiner "a" before "different offense" cuts off the modifying phrase "that is not a petty offense" so that it does not reach backward to "the same."

Second, in addition to disregarding the role of the word "that" (discussed above), the government's interpretation "disregards—indeed, is precisely contrary to—the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase (here, the relative clause "[that is not a petty offense] . . .') should ordinarily be read as modifying only the noun or phrase that it immediately follows (here, '[a different offense] . . .')." *Barnhardt v. Thomas*, 540 U.S. 20, 26 (2003).

---

[4] The "so-called series-qualifier canon can be a helpful interpretive tool" pursuant to which "a modifying clause at the end of a list . . . often applies to every item in the list." *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2448 (2021). "[H]owever, the series- qualifier canon gives way when it would yield a 'contextually implausible outcome.'" *Id.* (citation omitted) (rejecting D.C. Circuit's application of the series-qualifier canon and reversing *Confederated Tribes of the Chehalis Rsrv. v. Mnuchin*, 976 F.3d 15, 22–23 (D.C. Cir. 2020)).

*Accord Lockhart v. United States*, 577 U.S. 347, 351–52 (2016) (applying last antecedent canon to limit criminal culpability under 18 U.S.C. § 2252(b)(2)). *See also* Scalia & Garner at 145–46. In light of the last antecedent canon, the relative pronoun "that" in § 3561(a)(3) refers solely to the nearest antecedent "a different offense."

In any event, even if the government's interpretation were somehow grammatically correct, which it is not, "[t]he most grammatical reading of a sentence in a vacuum does not always produce the best reading in context." *Yellen*, 141 S. Ct. at 2447–48. Reading "that is not a petty offense" to modify solely "a different offense" and not "the same" is the best reading in context here.

### c.   The government's interpretation creates an irreconcilable conflict between §§ 3551(b) and 3563(a)(3)

The government's reading of § 3561(a)(3) cannot be reconciled with § 3551.[5] The government attempts to resolve the conflict between the provisions by offering "three reasons" the "general rule" in § 3551(b) "does not preclude . . . a split sentence under Section 3561(a)(3) for a petty offense." (Gov't Memo at 29-30.) The

---

[5] *United States v. Posley*, 351 F. App'x 807 (4th Cir. 2009), cited by the government (Gov't Memo at 27), misreads § 3561(a)(3) and completely ignores § 3551. As a result, its analysis, issued in an unpublished decision on the papers without the benefit of oral argument, is not remotely persuasive. The sentence affirmed in *Posley*—a sentence of two years of probation with six months of imprisonment as a "condition" of probation—is particularly problematic because, after six months of imprisonment, the defendant has reached the statutory maximum punishment authorized for the crime. Even if the probationary period following imprisonment were somehow legally enforceable (over the statutory maximum served), the defendant could not face any additional imprisonment for violating probation. Thus, the court could not impose any imprisonment for any violation of conditions of probation, and any arrest and detention on an alleged violation would be, at least arguably, unconstitutional, thus further demonstrating the implausibility of the government's argument

government's arguments around § 3551 are all inapposite because there is no conflict to be reconciled at all under the correct interpretation of § 3561(a)(3). "There can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously." Scalia & Garner at 180 ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). The Court should reject the government's attempt to resolve a statutory conflict that would not exist but for the government's (incorrect) statutory interpretation.

First, the government's reliance on § 3551(a) is misplaced. Section 3551(a) provides that "[e]xcept as otherwise specifically provided, a person found guilty of an offense" must be sentenced "in accordance with the provisions of this chapter [chapter 227] so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent they are applicable in light of all the circumstances of the case." It is undisputed here that Mr. Ivey must "be sentenced in accordance with the provisions of" chapter 227 to meet the purposes of sentencing listed in § 3553(a)(2)(A) through (D). Nothing "otherwise specifically provide[s]" that a defendant sentenced for violating 40 U.S.C. § 5104(d) should be sentenced pursuant to sentencing provisions of some other chapter "so as to achieve" some other purpose. Section 3561(a)(3) does not provide "otherwise," nor does it void or somehow override the unambiguous prohibition barring a sentence of both imprisonment and probation for "an" (*i.e.*, one single) "offense" in § 3551(b).

17

Second, the "general/specific canon," Scalia & Garner at 183–184, does not apply here. That canon of construction applies only when there is a conflict between general and specific provisions, Scalia & Garner at 183–184, or "[w]here there is no clear intention otherwise," *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974); *see id.* at 551 ("When there are two acts upon the same subject, the rule is to give effect to both if possible . . . . The intention of the legislature to repeal must be clear and manifest.") (quotation marks and citation omitted).

Here, there is no conflict between § 3551(b) and § 3561(a)(3); the two provisions are entirely consistent under the correct (and plain) reading of § 3561(a)(3). Rather, the government's desired reading of § 3561(a)(3) would create a conflict where there is otherwise no problem at all. For the same reason, the "later-[amended] provision" here (§ 3561(a)(3)) need not and does not "control[ ]" or "suspend" the original, unamended one (§ 3551(b)).

In addition, Congress's intent to prohibit "split sentences" is abundantly clear from both §§ 3551(b) and 3561(a). The addition of the words "that is not a petty offense" to § 3561(a)(3) did not obscure that intent. Nor did the amendment somehow "reinstate[ ] a sentencing court's authority to impose a split sentence" in any circumstance. (Gov't Memo at 27.) The government's suggestion that Congress implicitly repealed § 3551(b) for petty offenses by adding "that is not a petty offense" to § 3561(a)(3) is completely unsupported. (Gov't Memo at 29-30) (citing *Posadas v. Nat'l Bank of N.Y.*, 296 U.S. 497, 503 (1936); Scalia & Garder at 327–29). First of all, there is a presumption *against* implied repeals. *Posadas*, 296 U.S. at

18

503 ("The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible."); Scalia & Garner at 327–28 ("A doctrine of readily implied repealer would repeatedly place earlier enactments in doubt."). In any event, repeals by implication are "rare," *id.* at 328, and fall into two categories:

> (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

*Posadas*, 296 U.S. at 503. Neither circumstance applies here. The provisions at issue are not "in irreconcilable conflict"; they are entirely consistent when "that is not a petty offense" is read to modify solely "a different offense" and not "the same." Also, the "later act" (§ 3561(a)(3)) does not cover the whole subject of the earlier one (§ 3551(b)), nor was § 3561(a)(3) "clearly intended as a substitute" for § 3551(b). Moreover, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment. *Id.*

It is not the statutory provisions that conflict, but rather the government's desired interpretation of § 3561(a)(3) that cannot be reconciled with § 3551(b).

### d.   The correct reading of § 3563(a)(3) makes sense; the government's reading does not

While the wording of the § 3561(a)(3) is inartful, when read correctly, the provision makes sense in the context of modern federal sentencing under the Sentencing Reform Act ("SRA"). The SRA eliminated "split sentences," abolished parole, and added the possibility of a term of supervised release imposed as part of a term of imprisonment.[6] Probation and supervised release are separate and distinct forms of sentences. Probation is an alternative to incarceration—imposed instead of and in lieu of a term of imprisonment. By contrast, supervised release is part and parcel of a term of imprisonment. Thus, the federal sentencing system was designed to prevent a defendant from being on probation and supervised release at the same time. Because supervised release is not authorized for a petty offense, when a sentence of imprisonment is imposed for a single petty offense, it is served and then it is done; no court supervision may follow. Only then, in that situation, (where the defendant is sentenced to a *short* term of imprisonment and no supervision of any kind may follow) is it possible for the court to subsequently supervise the defendant on a term of (either) probation or supervised release for a separate offense of conviction without timing and sentence calculation issues. *Cf.*

---

[6] *See* U.S.S.G. § 5B1.1(b)(3) & comment. (backg'd) (2018) (identifying § 3561(a)(3) as the provision that "effectively abolished the use of 'split sentences' imposable pursuant to the former 18 U.S.C. § 3651," but noting that "the drafters of the Sentencing Reform Act noted that the functional equivalent of the split sentence could be 'achieved by a more direct and logically consistent route' by providing that a defendant serve a term of imprisonment followed by a period of supervised release") (citing S. Rep. No. 225, 98th Cong., 1st Sess. 89 (1983)).

18 U.S.C. § 3564(a) ("A term of probation commences on the day that the sentence of probation is imposed, unless otherwise ordered by the court.").

The government argues that Congress amended the language in § 3561(a)(3) to "provide[] sentencing courts with 'latitude,' . . . to ensure some degree of supervision—through probation—following incarceration" because "courts cannot impose supervised release on petty- offense defendants." (Gov't Memo at 28-29.) (citation omitted).  That makes little sense, because if Congress wanted to provide some degree of supervision for a person sentenced to incarceration for one single petty offense, it could have and would have amended § 3583(b)(3) by simply removing "(other than a petty offense)" to make supervised release available for all misdemeanors. Such an amendment to § 3583(b)(3) would have ensured the possibility of supervision for petty offenders without "reinstat[ing]" the possibility of a "split sentence," a mechanism that Congress so clearly and unambiguously abolished with the SRA. The fact that Congress did not do so evinces its intent.

Also, the government asserts that the fact that "every offense other than a petty offense [can] include some period of incarceration and some period of supervision (whether that supervision is supervised release or probation)" is "sensible penal policy." (Gov't Memo at 30-31.) However, permitting both up to six months of incarceration plus up to five years of probation for one single petty offense is far from "sensible." *Id.* at 45–46. A petty offense is, by nature, essentially the most minor type of charge brought in federal court. Thus, the government's

21

view, which allows the possibility of more punishment and a greater expenditure of resources for a petty offender than for a Class A misdemeanant, makes zero sense.[7]

The statute simply does not authorize a harsh increase in petty offense punishment. If Congress had wanted to so drastically change the sentencing scheme for petty offenses, it would have done so in a far more explicit manner. Probation as a sentence may be qualitatively less severe than imprisonment, but it still subjects offenders to "conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). It would be illogical to allow imprisonment and probation for the least serious offenses in the federal system.

### e.   Legislative history supports Mr. Ivey's proposed interpretation

While the plain text of the statute, the context of the statute, and its place within the entire statutory sentencing scheme compel the conclusion that a "split sentence" is never authorized or available for any single offense (petty or not), "Congress's unenacted [proposed] language" is informative and consistent with the interpretation advanced herein. The legislative history of the phrase "that is not a petty offense" in subsection (a)(3) also supports Mr. Ivey's position. The phrase was

---

[7] Under the government's view, a defendant who committed one single petty offense could be punished with 6 months of imprisonment followed by five years of court supervision ("probation"); whereas, a defendant who committed a Class A misdemeanor, if sentenced to any amount of imprisonment at all, could be sentenced only to one year or less of court supervision ("supervised release"). Statutes should be construed to avoid such absurd results. *See, e.g., United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68–70 (1994); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 453–455 (1989); *United States v. Turkette*, 452 U.S. 576, 580, (1981); *Holy Trinity Church v. United States*, 143 U.S. 457 (1892); *United States v. Kirby*, 74 U.S. 482 (1868).

added to the statute as part of the massive Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, 108 Stat. 1796, 1805, 2096 (Sept. 13, 1994), in a section entitled "Authorization of Probation for Petty Offenses *in Certain Cases*"(emphasis added).[8] The title alone refutes the government's position and makes clear that the amendment did not authorize probation for each and every petty offense in each and every case.

The Senate first proposed to amend § 3561(a)(3) in a section with the same exact title, in the Violent Crime Control and Law Enforcement Act of 1991, "by adding at the end:"

> 'However, this paragraph does not preclude the imposition of a sentence to a term of probation for a petty offense if the defendant has been sentenced to a term of imprisonment at the same time for another such offense.'.

H.R. Rep. No. 102-405, Tit. XXVI § 2601 (Nov. 27, 1991).[9] The legislation was never enacted. The Senate later proposed the same language in amendments to the bill that became the Violent Crime Control and Law Enforcement Act of 1994. *See* H.R.

---

[8] Tit. XXVIII – SENTENCING PROVISIONS
 . .
SEC. 280004. AUTHORIZATION OF PROBATION FOR PETTY OFFENSES IN CERTAIN CASES.
     Section 3561(a)(3) of title 18, United States Code, is amended by inserting "that is not a petty offense" before the period.

[9] TITLE XXVI SENTENCING AND MAGISTRATES AMENDMENTS
SEC. 2601. AUTHORIZATION OF PROBATION FOR PETTY OFFENSES IN CERTAIN CASES.
Section 3561(a)(3) of title 18, United States Code, is amended by adding at the end: "However, this paragraph does not preclude the imposition of a sentence to a term of probation for a petty offense if the defendant has been sentenced to a term of imprisonment at the same time for another such offense."

3355, Tit. XXV, § 2501 (as passed by Senate, Nov. 19, 1993).[10] The originally proposed language shows Congress's intent to authorize a term of probation in addition to one of imprisonment in the limited circumstances of when the defendant is sentenced for multiple petty offenses. The statute, as amended, fulfils that intent; it does not, as the government asserts, "reinstate [ ] a sentencing court's authority to impose a split sentence for a petty offense."  (Gov't Memo at 27.)

The government seems to suggest that *unexplained* Conference Committee revisions to the originally proposed language indicate that Congress went "further" than the Senate proposed. As the government notes, however, "[u]nexplained changes made in committee are not reliable indicators of congressional intent." *Drummond Coal Co. v. Watt*, 735 F.2d 469, 474 (11th Cir. 1984) (citing *Trailmobile Company v. Whirl*s, 331 U.S. 40, 61 (1947)). On the other hand, the language originally proposed by the Senate "reveals the purpose[]" of the amendment and "supports" the correct reading of the provision as amended. *Drummond Coal Co.*, 735 F.3d at 474, *cited with approval in Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989).

### f.   Any ambiguity and irreconcilability must be resolved in Mr. Ivey's favor under the rule of lenity.

Finally, "even if the statute were ambiguous in the sense of *permitting* the government's construction, '[t]he rule of lenity requires ambiguous criminal laws to be

---

[10] Available at https://www.congress.gov/103/bills/hr3355/BILLS-103hr3355eas.pdf (p. 490) (accessed Feb. 17, 2022). The language was truncated to its current form without explanation in a Conference Report filed in the House on August 10, 1994. H.R. Rep. No. 103-694, 140 Cong. Rec. H7459, (1994) (Conf. Rep.).

interpreted in favor of the defendants subjected to them.'" *United States v. Cano-Flores*, 796 F.3d 83, 93–94 (D.C. Cir. 2015) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)). The rule of lenity "applies to sentencing as well as substantive provisions." *United States v. Batchelder*, 442 U.S. 114, 121 (1979); *see also* Scalia & Garner at 190–91, 296–301 ("[A] fair system of laws requires precision in the definition of offenses and punishments.").

In *Bell v. United States*, the U.S. Supreme Court faced the question whether transportation of two women on the same trip and in the same vehicle in violation of the Mann Act constituted a single offense. *Bell v. United States*, 349 U.S. 81, 83_84 (1955). In holding that there was only one offense, the Supreme Court explained that the statute could reasonably be read either way, but that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Id*. The Supreme Court stressed that the holding reflected a "presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. *Id*. The Supreme Court emphasized that "if Congress did not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Id. See also Ladner v. United States*, 358 U.S. 169, 178 (1958) ("policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the

25

penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended").[11]

### g.    The government's interpretation raises significant constitutional concerns

Finally, the government's ill-considered position raises significant constitutional questions. Specifically, under the government's theory and without explicit congressional approval, one single petty offense would become punishable by six months of imprisonment *and* five years of probation, in stark contrast to the now-accepted punishment of up to six months of imprisonment *or*, in the alternative, up to five years of probation. *See United States v. Nachtigal*, 507 U.S. 1, 5 (1993) ("the federal DUI offense carries a maximum fine of $5,000, and respondent faced, *as an alternative to incarceration*, a maximum 5-year term of probation") (emphasis added).

Defendants charged with petty offenses are presumptively not entitled to a jury trial, but a defendant can overcome the presumption by showing "that the additional penalties, viewed together with the maximum prison term" are "so severe" that the crime is a "serious" one. *Id.* (citing *Blanton v. North Las Vegas*, 489 U.S. 538, 541–43 (1989)). The potential to punish a petty offense with a six-month

---

[11] To the extent that § 3563(b)(10) permits a court to impose a sentence of probation with a discretionary condition of a period of incarceration, it directly contradicts and is irreconcilable with §§ 3551(b) and 3561(a)(3). The characterization of imprisonment as a "condition of probation" in § 3563(b)(10) cannot and does not transform imprisonment into anything other than imprisonment. For the reasons discussed herein, a court has no statutory authority to give a sentence of both probation and imprisonment for one single offense, regardless of what the imprisonment is called. *Accord* Scalia & Garner at 190, 296 ("If irreconcilability occurs with penal provisions, the result should favor the accused.")

26

term of imprisonment followed by five years of probation may be severe enough to rebut the presumption that a defendant is not entitled to a jury trial and thereby entitle Mr. Ivey and other petty offenders to jury trials in federal court. *Cf. id.* (holding that "probation *alternative*" to imprisonment did not render federal DUI (petty) offense sufficiently "serious" to warrant jury trial right (emphasis added)). *See also Blanton*, 489 U.S. at 543 (standard "ensure[s] the availability of a jury trial in the rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-months incarceration line'").

In short, the government's arguments conjure constitutional questions that should be avoided. *See, e.g., United States v. Jin Fuey Moy*, 241 U.S. 394 (1916) (statutes should be construed to avoid constitutional questions); *see also Rust v. Sullivan*, 500 U.S. 173, 191 (1991) ("[The constitutional avoidance] canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations.").

### h.   Conclusion

For all of these reasons this Court does not have authority to authority to sentence Mr. Ivey to both incarceration and probation for the single count of conviction in this case.  For the reasons stated in his original sentencing memorandum and this response, this Court should sentence Mr. Ivey to a period of probation and a term of home confinement.

Respectfully submitted,

s/ *R. David Baker*
R. DAVID BAKER
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047
David_baker@fd.org

Attorney for Bryan Wayne Ivey

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2022, I electronically filed the foregoing *Defendant's Response to Government's Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Leslie A. Goemaat, Assistant United States Attorney, 555 4th St. N.W., Washington, D.C., 20530.

s/ *R. David Baker*
R. DAVID BAKER